SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Charudutt J. Patel (A-13-18) (081069)**

**Argued April 23, 2019 -- August 7, 2019**

**ALBIN, J., writing for the Court.**

In State v. Laurick, the Court held that a defendant is not subject to an enhanced custodial sentence for a second or subsequent driving while intoxicated (DWI) conviction if he was not advised of his right to counsel in an earlier DWI proceeding and entered an uncounseled guilty plea or went to trial without counsel.  120 N.J. 1, 16-17 (1990).  Here, the Court considers the applicable standards for both indigent and non-indigent defendants who seek relief from an enhanced custodial sentence for a second or subsequent DWI based on a claimed denial of notice of the right to counsel in an earlier DWI case.

In 2015, defendant Charudutt Patel was charged in two separate instances with DWI.  Patel had twice before been convicted of DWI.  In 1994, he pled guilty to DWI in the Piscataway Municipal Court.  In 2010, Patel pled guilty to DWI in the North Brunswick Municipal Court.  Because of the passage of more than ten years between the first and second convictions, Patel was sentenced as a first-time offender.  See N.J.S.A. 39:4-50(a).  The two 2015 DWI charges exposed Patel to potential third and fourth DWI convictions.  Patel claimed that his 1994 conviction in the Piscataway Municipal Court was uncounseled and therefore could not be used for custodial enhancement purposes pursuant to Laurick.  Thus, for Laurick purposes, Patel contended that he stood before the court as a second-time offender, and he moved to bar the use of his allegedly uncounseled 1994 DWI guilty plea to enhance any custodial sentence in the pending DWI cases.

In support of his Laurick motion, Patel filed two certifications averring that he was indigent at the time of his 1994 DWI guilty plea, that he appeared in the Piscataway Municipal Court without an attorney, and that the municipal court judge did not advise him of his right to retain one.  Patel did retain an attorney in 2010 to represent him on the DWI charge in North Brunswick.  In 2016, no documents remained in the Piscataway Municipal Court to disprove Patel's certifications.

The court denied Patel's Laurick motion.  Patel filed a motion for reconsideration and a third certification to clarify his earlier certifications.  He asserted that in 1994, "the Judge never advised me that I had a right to retain an attorney nor did he advise me that I

1

had a right to an appointed attorney at no charge. Therefore, I simply pled guilty." The court denied the motion for reconsideration, stating that in the absence of municipal court records, Patel's certifications were insufficient to prove that he was denied notice of his right to counsel twenty-two years earlier and that, in any event, he should have filed his Laurick motion in 2010 when he was charged with his second DWI in North Brunswick.

The Law Division denied Patel's appeal. He then pled guilty to the third DWI incident, in exchange for which other charges, including the fourth DWI charge, were dropped. The Appellate Division affirmed, and the Court granted Patel's petition for certification. 235 N.J. 337 (2018).

**HELD:** To secure relief from an enhanced custodial sentence for a subsequent DWI conviction, a non-indigent defendant must establish that in the earlier uncounseled DWI proceeding, (1) he was not advised or did not know of his right to counsel and (2) had he known of his right to counsel, he would have retained a lawyer. A defendant contending he was indigent must establish that in the earlier uncounseled DWI proceeding (1) he was not advised and did not know of his right to appointed counsel, (2) he was entitled to the appointment of counsel under the applicable financial means test, R. 7:3-2(b), and (3) had he been properly informed of his rights, he would have accepted appointed counsel. Because denial of counsel is a structural defect in the proceeding, to secure relief from an enhanced custodial sentence, neither an indigent nor a non-indigent defendant must show that the outcome would have been different had he been represented. The Court removes the five-year limitation in Laurick petitions and amends Rule 7:10-2(g)(2), effective immediately, to provide the following: "(2) Time Limitations. A petition seeking relief under this Rule may be filed at any time." Here, Patel's unrebutted certifications established that his 1994 plea was uncounseled, and he had no obligation to establish that he would not have pled guilty or been convicted at trial had he been represented by counsel. The Court therefore reverses the judgment of the Appellate Division and remands the matter for proceedings consistent with this opinion.

1. The right to the assistance of counsel is guaranteed to all defendants charged with DWI. Knowledge of one's right to counsel is indispensable to the exercise of that right. For that reason, all municipal court judges must "inform the defendant of the right to retain counsel or, if indigent, to have counsel assigned pursuant to [Rule 7:3-2(b)]." R. 7:3-2(a). The court also must ask the defendant "whether legal representation is desired" and record the response "on the complaint." Ibid. Because of the singular importance of the right to counsel, the denial of counsel is deemed a structural defect in the framework of the proceedings -- a defect that cannot be quantitatively assessed and therefore defies a harmless error analysis. A defendant denied the right to counsel does not have to establish prejudice on direct appeal; prejudice is presumed. (pp. 13-16)

2. In Laurick, the Court held that a prior uncounseled DWI conviction could "not be used to increase a defendant's loss of liberty," but made clear that there was no impediment to

the use of other collateral consequences of the uncounseled conviction, such as a period of license suspension or financial penalties. 120 N.J. at 4. The Court set different standards of proof for indigent and non-indigent DWI defendants who sought to bar the use of the prior uncounseled DWI conviction for custodial sentence enhancement purposes. See id. at 11. The non-indigent defendant must show, like indigent defendants, a "lack of notice as well as the absence of knowledge of the right to be represented by counsel of one's choosing," but must also show "that the lack of notice otherwise affected the outcome." Id. at 11, 17. The Court did not explain its reasons for placing a higher burden on non-indigent defendants. In State v. Hrycak, the Court "reaffirm[ed] [its] holding in Laurick that an uncounseled DWI conviction may not be used to enhance the period of incarceration for a subsequent offense," restated the Laurick formula, and again set different standards for indigent and non-indigent defendants as to whether prior uncounseled DWI convictions could be used for custodial sentence enhancement purposes. 184 N.J. 351, 354, 362-63 (2005). (pp. 16-21)

3. In State v. Schadewald, the Appellate Division altered the tests for indigent and non-indigent defendants challenging prior uncounseled DWI convictions articulated in Laurick and Hrycak. See 400 N.J. Super. 350, 354-55 (App. Div. 2007). In that case, the Appellate Division held that both indigent and non-indigent defendants must "demonstrate that if they had been represented by counsel, they had a defense to the DWI charge and the outcome would, in all likelihood, have been different." Id. at 354. The Appellate Division in this case followed the Schadewald paradigm. (pp. 21-22)

4. Schadewald treats equally two classes of similarly situated defendants. That being said, Schadewald is in clear conflict with the holdings in both Laurick and Hrycak and arguably imposes an unduly burdensome standard by requiring that indigent and non-indigent defendants prove that the outcome would have been different had they been represented by counsel. Denial of counsel -- here the denial of the opportunity to retain counsel or secure appointed counsel -- is a structural defect in the proceedings, not quantifiable by any traditional measurement and therefore not typically susceptible to a harmless-error analysis. And when notice of the right to counsel is not given in DWI cases, to obtain the special form of relief recognized in Laurick, neither indigent nor non-indigent defendants should be required to establish that the outcome of the proceeding would have been different had they been given the opportunity to retain counsel or secure appointed counsel. (pp. 22-24)

5. The Court adopts the standards reprinted in the HELD paragraph above and notes that the defendant has the burden of proving that his prior uncounseled DWI conviction was based on the municipal court's failure to advise him of his right to counsel. If municipal courts retain the records mandated by New Jersey court rules and jurisprudence, determining whether there was compliance with the notice requirements should not be difficult. The defendant must secure the relevant documents to establish a violation of the notice requirement. In the absence of documentary evidence or witnesses with a

3

recollection, the defendant is in a position to do no more than file an affidavit averring that he was not advised of his right to counsel and did not know that he could retain counsel. The defendant who claims he was indigent at the time of the prior proceeding should attest that he was not advised and did not know of his right to appointed counsel, and was unable to afford an attorney. In future cases, he also should attach to his affidavit or certification documents that would establish his indigence. (pp. 24-25)

6. In the present case, the Piscataway Municipal Court has indicated that no record remains of whether Patel's 1994 DWI guilty plea was uncounseled or whether Patel was given notice of his right to counsel and, if indigent, the right to appointed counsel. Patel filed three certifications in the Piscataway Municipal Court in support of his application to bar the use of his 1994 DWI conviction to enhance his custodial term. Patel has made clear in his certifications that had he been advised of his right to counsel, he would have sought the assistance of counsel -- preferably appointed counsel -- and, if he had resources, retained counsel. Patel's assertions -- like those of the defendant in Laurick -- have gone unrebutted. See Laurick, 120 N.J. at 6. Patel has satisfied his burden of showing that his prior uncounseled DWI conviction was caused by the municipal court's failure to advise him of his right to counsel. (pp. 26-27)

7. The current court rules provide that a petition for Laurick relief "shall not be accepted for filing more than five years after entry of the judgment of conviction or imposition of the sentence sought to be attacked, unless it alleges facts showing that the delay in filing was due to defendant's excusable neglect." R. 7:10-2(g)(2); R. 7:10-2(b)(2). In the present case, Patel submits that he sought relief from his prior uncounseled conviction at the only time that it made sense to do so and that therefore any "delay" should be deemed excusable. State v. Bringhurst, 401 N.J. Super. 421 (App. Div. 2008), supports this point. The Bringhurst court reasoned that because "a second or subsequent [DWI] conviction may occur at any time in the future, it would be illogical to apply the Rule's five-year time limit mechanistically to deny all [Laurick] applications." Id. at 433. That logic accords with recommendations by the Municipal Court Practice Committee to allow a Laurick petition to be filed at any time. The Court now adopts the language proposed by the Committee and amends in part Rule 7:10-2(g), effective immediately, to provide:

> "(2) Time Limitations. A petition seeking relief under this Rule may be filed at any time."

(pp. 27-31)

**The judgment of the Appellate Division is REVERSED and the matter is REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

4

SUPREME COURT OF NEW JERSEY
A-13 September Term 2018
081069

State of New Jersey,

Plaintiff-Respondent,

v.

Charudutt J. Patel,

Defendant-Appellant.

On certification to Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| April 23, 2019 | August 7, 2019 |

Victor A. Rotolo argued the cause for appellant (Rotolo Karch Law, attorneys; Victor A. Rotolo, E. Carr Cornog, III, William E. Reutelhuber, and Matthew R. Marotta, on the briefs).

Patrick F. Galdieri, II, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the briefs).

Lila B. Leonard, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Lila B. Leonard, of counsel and on the brief).

Every defendant charged with driving while intoxicated (DWI), N.J.S.A. 39:4-50, is guaranteed the right to retain counsel or, if indigent, the right to appointed counsel in municipal court.[1] State v. Hrycak, 184 N.J. 351, 362 (2005). In a DWI case, the guiding hand of counsel is essential to safeguard fundamental rights in our adversarial system of justice, such as the right to a fair plea or trial proceeding.

To ensure the efficient administration of justice in our municipal courts, judges are directed to "inform the defendant of the right to retain counsel or, if indigent, to have counsel assigned." R. 7:3-2(a); see also Hrycak, 184 N.J. at 362. Judges are also required to ask the defendant "whether legal representation is desired" and to have the response "recorded on the complaint." R. 7:3-2(a).

Repeat DWI offenders are subject to enhanced custodial sentences, license suspensions, and financial penalties. N.J.S.A. 39:4-50(a)(2)-(3). We held in State v. Laurick that a defendant is not subject to an enhanced custodial sentence for a second or subsequent DWI conviction if he was not advised of

---

[1] "'Indigent defendant' means a person who is entitled to be represented by a municipal public defender . . . and does not have the present financial ability to secure competent legal representation . . . ." N.J.S.A. 2B:24-2.

his right to counsel in an earlier DWI proceeding and entered an uncounseled guilty plea or went to trial without counsel. 120 N.J. 1, 16-17 (1990). Under this special form of relief, the defendant is not relieved of enhanced financial and administrative penalties. Id. at 16.

Since Laurick, our courts have struggled to establish clear standards for both indigent and non-indigent defendants who seek relief from an enhanced custodial sentence for a second or subsequent DWI based on a claimed denial of notice of the right to counsel in an earlier DWI case. To receive this special form of relief from an uncounseled prior DWI conviction, we have imposed different standards on indigent and non-indigent DWI defendants. See Hrycak, 184 N.J. at 363. Only uncounseled non-indigent defendants are required to show that the outcome would have been different if counsel had been retained. Ibid. We can find no justification for such an asymmetrical approach.

The present case provides us with the opportunity to give clearer guidance to indigent and non-indigent DWI defendants who face an enhanced custodial sentence based on an earlier uncounseled DWI conviction. We now hold that to secure relief from an enhanced custodial sentence for a subsequent DWI conviction, a non-indigent defendant must establish that in the earlier uncounseled DWI proceeding, (1) he was not advised or did not know of his right to counsel and (2) had he known of his right to counsel, he would have

3

retained a lawyer. A defendant contending he was indigent must establish that in the earlier uncounseled DWI proceeding (1) he was not advised and did not know of his right to appointed counsel, (2) he was entitled to the appointment of counsel under the applicable financial means test, R. 7:3-2(b), and (3) had he been properly informed of his rights, he would have accepted appointed counsel. Because denial of counsel is a structural defect in the proceeding, to secure relief from an enhanced custodial sentence, neither an indigent nor a non-indigent defendant must show that the outcome would have been different had he been represented.

## I.

## A.

In 2015, defendant Charudutt Patel was charged in two separate instances with DWI -- in Tewksbury Township in January and in Hillsborough Township five months later. The assignment judge of the vicinage consolidated both cases for disposition in the Tewksbury Municipal Court.

Patel had twice before been convicted of DWI. In 1994, he pled guilty to DWI in the Piscataway Municipal Court.[2] As a consequence of his guilty

---

[2] According to a police report, a Piscataway Township patrol officer found Patel asleep in his car with the engine running in a restaurant parking lot located within 100 feet of a police department drunk-driving checkpoint. In Patel's car were two bags containing four beers. Patel was transported to police headquarters, where a breathalyzer test was administered. Two tests

4

plea, his license was suspended for six months, and he was fined $495.  In 2010, Patel pled guilty to DWI in the North Brunswick Municipal Court. Because of the passage of more than ten years between the first and second convictions, Patel was sentenced as a first-time offender to serve twelve hours at an Intoxicated Driver Resource Center and fined $764.  See N.J.S.A. 39:4-50(a) (providing that, for sentencing purposes, a second DWI conviction is treated as a first DWI conviction if more than ten years have passed between the first and second offenses).  Additionally, Patel received a three-month license suspension.

The two 2015 DWI charges exposed Patel to potential third and fourth DWI convictions.  For a third and subsequent DWI conviction, Patel faced a 180-day term of imprisonment, a ten-year license suspension, and significant financial and administrative penalties.  Patel claimed that his 1994 conviction in the Piscataway Municipal Court was uncounseled and therefore could not be used for custodial enhancement purposes pursuant to Laurick, 120 N.J. at 4 (holding that "a prior DWI conviction that was uncounseled in violation of court policy may not be used to increase a defendant's loss of liberty").  Thus,

_____

revealed that Patel's blood alcohol content (BAC) measured at .13 percent and .12 percent.

5

for <u>Laurick</u> purposes, Patel contended that he stood before the Tewksbury Municipal Court as a second-time offender.

In 2016, Patel filed a <u>Laurick</u> motion in the Piscataway Municipal Court to bar the use of his allegedly uncounseled 1994 DWI guilty plea to enhance any custodial sentence in the pending DWI cases in the Tewksbury Municipal Court. <u>See</u> <u>R.</u> 7:10-2(g)(1) ("A post-conviction petition to obtain relief from an enhanced custodial term based on a prior conviction shall be brought in the court where the prior conviction was entered."). In support of his <u>Laurick</u> motion, Patel filed two certifications in which he made the following averments. At the time of his 1994 DWI guilty plea, Patel was a twenty-eight-year-old recent immigrant from India, having moved to the United States four years earlier. He lived with his wife in an apartment, was unemployed, "and had no money to . . . hire an attorney." His wife paid the rent, and they "were barely scraping by." He appeared in the Piscataway Municipal Court without an attorney, and the municipal court judge did not advise him of his right to retain one. Patel did retain an attorney in 2010 to represent him on the DWI charge in North Brunswick.

In 2016, no documents remained in the Piscataway Municipal Court to disprove Patel's certifications. In a handwritten note, the municipal court administrator advised that "[a]fter 15 years all DWI files are sent for

destruction. No transcripts are available." Through counsel, Patel asserted to the present Piscataway Municipal Court judge that in 1994, without the advice of counsel, he "just assumed that he had to plead guilty" to the DWI charge.

The court denied Patel's Laurick motion. In doing so, it explained that not only had Patel failed to present a claim of innocence to the 1994 DWI charge, but also that the State would suffer undue prejudice because of the age of the case and the destruction of documents. The court added that there remained several unknowns: whether Patel consulted with an attorney and whether the 1994 municipal court judge advised him of his right to counsel.

Patel filed a motion for reconsideration and a third certification to clarify his earlier certifications. He asserted that in 1994, "the Judge never advised me that I had a right to retain an attorney nor did he advise me that I had a right to an appointed attorney at no charge. Therefore, I simply pled guilty." Patel added, "Had I known that I could have had an attorney appointed for me at no charge I would have taken advantage of that option."

The court denied the motion for reconsideration, stating that in the absence of municipal court records, Patel's certifications were insufficient to prove that he was denied notice of his right to counsel twenty-two years earlier and that, in any event, he should have filed his Laurick motion in 2010 when he was charged with his second DWI in North Brunswick.

7

B.

Patel appealed to the Middlesex County, Law Division.  In denying the appeal, the court stated that Patel was not entitled to relief because his certifications did not assert that he had a viable defense to the 1994 DWI charge and because he did not establish that the outcome would have been different if he had the benefit of counsel.

C.

In December 2016, Patel pled guilty in Tewksbury Municipal Court to the Tewksbury DWI charge.  The court sentenced Patel, as a third-time offender, to 180 days in the county jail, suspended his license for ten years, and imposed the requisite fines and administrative penalties.  See N.J.S.A. 39:4-50(a)(3).  The remaining charges, including the Hillsborough DWI charge, were dismissed.  The court stayed the custodial portion of the sentence pending Patel's appeal.

D.

The Appellate Division affirmed, finding that the Law Division "correctly determined [that Patel] failed to sustain his burden of establishing entitlement to Laurick relief."  The court held that Patel had the obligation of "showing he had a defense to the DWI charge or in all likelihood the result

8

would have been different if he had counsel for his 1994 DWI proceeding," citing State v. Schadewald, 400 N.J. Super. 350, 354-55 (App. Div. 2007). It concluded that Patel's certifications were "bereft of any evidence" demonstrating "that the result of the 1994 DWI proceeding would have been different if he had received proper notice of his right to counsel." Having rejected Patel's appeal on that basis, the Appellate Division, relying on Rule 7:10-2(g)(2)'s five-year bar, declined to address "whether [Patel's] certifications [were] sufficient to establish he was indigent at the time of the 1994 DWI proceeding, or whether [Patel] sufficiently demonstrated excusable neglect under Rule 7:10-2(b)(2) to permit the filing of his petition more than sixteen years after the Rule's five-year time limit."

## E.

We granted Patel's petition for certification. 235 N.J. 337 (2018). We also granted the New Jersey Attorney General's motion to participate as amicus curiae.

## II.

## A.

Patel contends that, under Laurick and Hrycak, a defendant challenging an enhanced custodial sentence to a DWI conviction based on a prior uncounseled DWI conviction, secured while he was indigent, need prove only

9

that he was not given notice of his right to counsel and to the assignment of counsel if unable to afford an attorney. He submits that an indigent defendant is not required to establish that "he had a defense to the DWI charge, and that the outcome would have in all likelihood been different," citing Laurick and Hrycak. Given the precedents of this Court, he argues that the decisions by the Appellate Division and Law Division in this case, and the Appellate Division decisions in Schadewald, 400 N.J. Super. at 354-55, and State v. Bringhurst, 401 N.J. Super. 421, 435 (App. Div. 2008), are in error.

Patel submits, moreover, that he had no reason to pursue a Laurick petition in 2010 -- the time of his second DWI conviction -- because the passage of more than ten years between his first and second DWI convictions allowed him to be sentenced as a first-time offender. He also notes that by 2010, the Piscataway Municipal Court's records had already been destroyed pursuant to the judiciary's retention policy. Last, he argues that the five-year time bar of Rule 7:10-2(g)(2) -- a rule adopted in 2009 -- should not apply retroactively to his uncounseled 1994 DWI conviction because Laurick, decided in 1990, placed no time constraints on relief from an improper sentence enhancement.

B.

The State acknowledges that, under <u>Laurick</u>, the standard for obtaining relief is less onerous for indigent defendants than non-indigent defendants because the indigent defendant need only prove that he did not receive notice of the right to assignment of counsel, he was not appointed assigned counsel, and he did not waive the right to counsel, citing <u>Hrycak</u>, 184 N.J. at 363. Nevertheless, the State maintains that Patel did not make a sufficient showing to the Piscataway Municipal Court that he was indigent when he entered his 1994 guilty plea. The State points out that an "indigent defendant" entitled to the representation by a municipal public defender is one who "does not have the present financial ability to secure competent legal representation," quoting N.J.S.A. 2B:24-2. According to the State, Patel's claims of indigence were "self-serving, unsubstantiated, and conclusory" because he did not submit relevant financial documents, such as "tax returns, unemployment records, and bank statements."

The State contends that the absence of adequate proof of indigence required Patel to satisfy the additional burden of showing that "his 1994 guilty plea wrought a miscarriage of justice," and that he failed to do so. In the State's view, "[t]he police records demonstrate that even if [Patel] were represented by counsel, he still would have been found guilty of DWI."

Last, the State argues that Patel failed to demonstrate excusable neglect or some other justifiable reason for relaxing the five-year time bar of Rules 7:10-2(g)(2) and (b)(2), and therefore he is foreclosed from attacking a twenty-two-year-old municipal court conviction.

## C.

Disagreeing with both Patel and the State, the Attorney General claims that Laurick did not impose different requirements for relief for indigent and non-indigent defendants. The Attorney General posits that Laurick "recognized that both indigent and non-indigent defendants must show that the lack of notice of their respective rights resulted in a miscarriage of justice." (emphasis added). In the Attorney General's view, relieving indigent defendants but not non-indigent defendants of the requirement of showing a miscarriage of justice "would deprive non-indigent defendants of equal protection of the law, and would thus be untenable." Otherwise, the Attorney General concurs with the arguments advanced by the State that Patel is not entitled to Laurick relief.

## III.

## A.

The parties and courts in this case have varied interpretations of the governing case law. We review issues of law de novo and owe no deference to

12

the interpretive conclusions of either the Appellate Division or Law Division. State v. Quaker Valley Farms, LLC, 235 N.J. 37, 55 (2018). Factual findings made by the trial court are entitled to deference provided they are supported by "sufficient credible evidence in the record." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., LLC, 215 N.J. 242, 253 (2013) (quoting Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 397 (2009)). Only when those findings are "clearly mistaken" will we intervene in the interests of justice. State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).

B.

The right to the assistance of counsel is guaranteed to all defendants charged with DWI. State v. Stein, 225 N.J. 582, 594 (2016); R. 7:3-2(a). Indigent defendants facing imprisonment or other consequences of magnitude are also guaranteed the appointment of counsel without cost "as a matter of simple justice." Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971); see also R. 7:3-2(b). We granted that right to indigent defendants through "the exercise of [our] supervisory jurisdiction over procedures in New Jersey courts." Laurick, 120 N.J. at 8 (citing Rodriguez, 58 N.J. at 294); see also N.J. Const. art. VI, § 2, ¶ 3 ("The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts."). In doing so, we recognized that "considerations of fairness

13

dictate that appropriate steps be taken to protect unrepresented indigent defendants against injustices which may result from their inability to cope fairly with municipal court charges against them." Rodriguez, 58 N.J. at 294.

Knowledge of one's right to counsel is indispensable to the exercise of that right. For that reason, all municipal court judges must "inform the defendant of the right to retain counsel or, if indigent, to have counsel assigned pursuant to [Rule 7:3-2(b)]." R. 7:3-2(a). The court also must ask the defendant "whether legal representation is desired" and record the response "on the complaint." Ibid.

The assistance of counsel is essential to a fair proceeding in our adversarial system of justice. See United States v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006) ("[R]epresentation by counsel 'is critical to the ability of the adversarial system to produce just results.'" (quoting Strickland v. Washington, 466 U.S. 668, 685 (1984))). "[T]he untrained defendant is in no position to defend himself . . . even where there are no complexities," Rodriguez, 58 N.J. at 295, and "[w]ithout the guiding hand of counsel, an innocent defendant may lose his freedom because he does not know how to establish his innocence," State v. Sugar, 84 N.J. 1, 16 (1980). Because of the singular importance of the right to counsel, the denial of counsel is deemed a structural defect in the framework of the proceedings -- a defect that cannot be

14

quantitatively assessed and therefore defies a harmless error analysis. Gonzalez-Lopez, 548 U.S. at 148-49; see also State v. Gonzalez, 114 N.J. 592, 608 (1989) (holding on direct appeal that the defendant's "conviction must be reversed . . . because the defendant was not adequately advised of his right to counsel"). A defendant denied the right to counsel does not have to establish prejudice on direct appeal; prejudice is presumed. See Gonzalez-Lopez, 548 U.S. at 148-49; see also State v. McCombs, 81 N.J. 373, 375 (1979).

C.

Defendants charged with DWI are guaranteed the right to counsel because the penalties for a DWI conviction constitute consequences of magnitude. See Rodriguez, 58 N.J. at 295. Progressive penalties apply to defendants convicted of a second and subsequent DWI violation. See N.J.S.A. 39:4-50(a)(1)-(3). A first-time offender is subject to a period of license suspension of up to a year depending in part on his BAC level, a potential term of imprisonment of thirty days, a fine between $250 and $500, and other penalties. N.J.S.A. 39:4-50(a)(1). A second-time offender is subject to a period of license suspension of two years, a term of imprisonment of two to ninety days, a fine between $500 and $1000, and other penalties. N.J.S.A. 39:4-50(a)(2). A third-time or subsequent offender is subject to a period of license suspension of ten years, a mandatory term of imprisonment of 180 days

15

(which may be lowered by as many as 90 days served in an inpatient drug or alcohol rehabilitation program), a fine of $1000, and other penalties. N.J.S.A. 39:4-50(a)(3).

D.

In light of our discussion of the importance of the right to counsel and the severity of progressive DWI penalties, we turn to the central cases -- Laurick and Hrycak -- that govern enhanced custodial sentences based on prior uncounseled convictions.

In Laurick, the issue was whether a defendant convicted of a second or subsequent DWI could have his sentence enhanced by an earlier uncounseled DWI conviction. 120 N.J. at 4. In that case, we provided a limited form of post-conviction relief to those defendants who had not waived their right to counsel and who were not informed by the court of their right to retain counsel or, if indigent, of their right to assigned counsel without cost. Id. at 4, 16. We held that a prior uncounseled DWI conviction could "not be used to increase a defendant's loss of liberty." Id. at 4. We made clear, however, that under this special form of post-conviction relief there was no impediment to the use of other collateral consequences of the uncounseled conviction, such as a period of license suspension or financial penalties. Ibid. The remedy for those other collateral consequences, we stated, "should follow our usual principles for

16

affording post-conviction relief" -- the "showing of a denial of fundamental justice or other miscarriage of justice." Id. at 4-5.

In Laurick, the defendant pled guilty to a second DWI in municipal court. Id. at 6. He claimed, however, that five years earlier, during the proceeding when he pled guilty to the first DWI, "he had been unrepresented by counsel, unaware of his right to counsel, and uninformed of that right by the previous judge." Ibid. No proofs were presented to rebut defendant's claim that the earlier "court had failed to advise him of the right to appointed or retained counsel." Ibid. We held that, on the record before us, the defendant could only be sentenced to a custodial term as a first-time offender but was subject to all other collateral consequences as a second-time offender.[3] Id. at 17.

---

[3] The 2007-2009 Report of the Municipal Court Practice Committee explained the distinction between Laurick collateral relief and traditional post-conviction relief:

> The nature of the relief sought in a Laurick application is qualitatively different than the relief sought in a conventional post-conviction relief proceeding. In the latter category of applications, the relief sought is a vacating of the conviction. In a Laurick application, the conviction is left in place, however it may not be used to enhance the custodial component of a sentence related to a future conviction for a violation of the same statute.

In reaching that determination, the Court set different standards of proof for indigent and non-indigent DWI defendants who sought to bar the use of the prior uncounseled DWI conviction for custodial sentence enhancement purposes. See id. at 11. The indigent defendant need only show that his earlier DWI guilty plea "was a product of an absence of notice of the right to assignment of counsel and non-assignment of such counsel without waiver." Ibid. In contrast, the non-indigent defendant must show "lack of notice as well as the absence of knowledge of the right to be represented by counsel of one's choosing" and "show in addition that the lack of notice otherwise affected the outcome." Id. at 11, 17. The Court did not explain its reasons for placing a higher burden on non-indigent defendants.

Importantly, going forward, to ensure that evidence of right-to-counsel notices would be retained by municipal courts, the Court directed that "the hard-copy judgment of conviction in DWI cases should contain a notation by the municipal court that the Rodriguez notice has been given and counsel waived." Id. at 12. The Court, moreover, indicated that the "notation will

> [Mun. Ct. Practice Comm., 2007-2009 Report 27 (2009).]

In Laurick, we did not bar the defendant from seeking full post-conviction relief from the court of original jurisdiction in the earlier DWI case. 120 N.J. at 17.

18

have presumptive correctness."[4] Ibid. Last, the Court noted that "post-conviction relief from the effect of prior convictions should normally be sought in the court of original jurisdiction." Id. at 17.

The right-to-counsel principles articulated in Laurick were essentially grounded in state law, particularly the landmark decision in Rodriguez. Id. at 7-8. We discoursed, however, on the plurality decision in Baldasar v. Illinois, 446 U.S. 222 (1980), in which four members of the United States Supreme Court held that an uncounseled misdemeanor conviction could not be used to enhance punishment by "convert[ing] a subsequent misdemeanor into a felony with a prison term." Laurick, 120 N.J. at 14 (alteration in original) (quoting Baldasar, 446 U.S. at 222 (1980)). We expressed "genuine doubt" about the future course that the United States Supreme Court might take in this area, but decided to adopt the "core value" of the Baldasar plurality opinion -- "that an uncounseled conviction without waiver of the right to counsel is invalid for the purpose of increasing a defendant's loss of liberty." Id. at 16.

In Nichols v. United States, 511 U.S. 738 (1994), the United States Supreme Court overruled the plurality opinion in Baldasar and "held that an

---

[4] The Court also expressed hope that, in the future, the judiciary's computerized records would "permit storage of daily docket information for longer periods of time without space or storage problems" and that those records could be readily retrieved. Ibid.

19

uncounseled prior conviction 'may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment.'" See Hrycak, 184 N.J. at 354 (quoting Nichols, 511 U.S. at 746-47). In light of the Nichols decision, we granted certification in Hrycak "to reconsider our decision in Laurick." Ibid.

In Hrycak, we "reaffirm[ed] our holding in Laurick that an uncounseled DWI conviction may not be used to enhance the period of incarceration for a subsequent offense." Ibid. (citing Laurick, 120 N.J. at 16). We explained that -- "wholly apart from the rationale in Baldasar" -- our decision in Laurick relied on Rodriguez, which "emphasized our long held view that criminal defendants have a right to counsel." Id. at 360 (citing Rodriguez, 58 N.J. at 285).

We restated the Laurick formula in Hrycak and again set different standards for indigent and non-indigent defendants when determining whether prior uncounseled DWI convictions could be used for custodial sentence enhancement purposes. Id. at 363. According to Hrycak, the threshold issue for both indigent and non-indigent defendants is whether they satisfied their burden of proving that they were not advised of their right to counsel in the prior DWI proceeding. Ibid. The defendant who was indigent at the time of the prior proceeding must establish that the uncounseled "DWI conviction was

20

a product of an absence of notice of the right to assignment of counsel and non-assignment of such counsel without waiver." Ibid. (quoting Laurick, 120 N.J. at 11). In contrast, the defendant who was non-indigent must show not only that his prior uncounseled DWI conviction was based on a "lack of notice as well as the absence of knowledge of the right to be represented by counsel of one's choosing," but also "that the absence of such counsel had an impact on the guilt or innocence of the accused or otherwise 'wrought a miscarriage of justice for the individual defendant.'" Ibid. (quoting Laurick, 120 N.J. at 11).

E.

In Schadewald, the Appellate Division altered the tests for indigent and non-indigent defendants challenging prior uncounseled DWI convictions articulated in Laurick and Hrycak. See 400 N.J. Super. at 354-55. In that case, the Appellate Division held that both indigent and non-indigent defendants must "demonstrate that if they had been represented by counsel, they had a defense to the DWI charge and the outcome would, in all likelihood, have been different." Id. at 354; accord Bringhurst, 401 N.J. Super. at 435. To prove "that the outcome would have been different if the defendant had the benefit of counsel before pleading guilty," the Appellate Division suggested that the defendant could submit "[p]olice reports, witness

statements, insurance investigations and the like." Schadewald, 400 N.J. Super. at 354-55. The Appellate Division in this case followed the Schadewald paradigm.

Schadewald treats equally two classes of similarly situated defendants. That being said, Schadewald is in clear conflict with the holdings in both Laurick and Hrycak.

The Attorney General has questioned whether treating indigent defendants differently from non-indigent defendants raises equal protection concerns. That is a legitimate question when there is no justifiable basis for the different classifications. The Attorney General urges us to follow Schadewald. But Schadewald arguably imposes an unduly burdensome standard by requiring that indigent and non-indigent defendants prove that the outcome would have been different had they been represented by counsel.

As discussed earlier, the denial of counsel -- here the denial of the opportunity to retain counsel or secure appointed counsel -- is a structural defect in the proceedings, not quantifiable by any traditional measurement and therefore not typically susceptible to a harmless-error analysis. The role of counsel is to ensure the reliability of the proceedings and a just outcome. See Hrycak, 184 N.J. at 363 ("We are convinced that a prior uncounseled DWI conviction of an indigent is not sufficiently reliable to permit increased jail

22

sanctions under the enhancement statute."); see also State v. Hayes, 205 N.J. 522, 541 (2011) ("Where a defendant in practice has been denied the right to be represented by counsel . . . we can have no confidence in the uncounseled proceedings below.").

Additionally, attempting to determine whether the defendant could have presented a viable defense had he been represented by counsel cannot be discerned merely by reviewing police reports or witness statements. In the typical DWI case, an attorney will consider whether the police officer had reasonable suspicion to conduct the motor vehicle stop, see State v. Amelio, 197 N.J. 207, 210-11 (2008); whether the officer had probable cause to obtain a breath sample, see State v. Chun, 194 N.J. 54, 79 (2008); whether the breathalyzer result was reliable, see State v. Kuropchak, 221 N.J. 368, 384-85 (2015); and whether a video or audio recording of the stop differs from the officer's police report, see Stein, 225 N.J. at 596.

What defense might have been mounted had Patel been represented in 1994 is a matter of sheer speculation at this point. Our jurisprudence, however, tells us that the assistance of counsel is vital to an adversarial proceeding and the reliability of the outcome. See Hayes, 205 N.J. at 541; Hrycak, 184 N.J. at 363.

23

For these reasons, when notice of the right to counsel is not given in DWI cases, to obtain the special form of relief recognized in Laurick, neither indigent nor non-indigent defendants should be required to establish that the outcome of the proceeding would have been different had they been given the opportunity to retain counsel or secure appointed counsel.

IV.

A.

We now clarify the standard for indigent and non-indigent defendants who challenge a custodial enhancement from a prior uncounseled DWI conviction. A defendant who was non-indigent at the time of the earlier uncounseled DWI proceeding must establish that (1) he was not advised or did not know of his right to counsel and (2) had he known of his right to counsel, he would have retained a lawyer. A defendant contending he was indigent in the earlier uncounseled DWI proceeding must establish that (1) he was not advised and did not know of his right to appointed counsel, (2) he was entitled to the appointment of counsel under the applicable financial means test, R. 7:3-2(b), and (3) had he been properly informed of his rights, he would have accepted appointed counsel.

The defendant has the burden of proving that his prior uncounseled DWI conviction was based on the municipal court's failure to advise him of his right

24

to counsel. If municipal courts retain the records mandated by our rules and jurisprudence, determining whether there was compliance with the notice requirements should not be difficult. See R. 7:3-2(a) ("The defendant shall be specifically asked whether legal representation is desired and defendant's response shall be recorded on the complaint."); Laurick, 120 N.J. at 12 ("[T]he hard-copy judgment of conviction in DWI cases should contain a notation by the municipal court that the Rodriguez notice has been given and counsel waived.").

The defendant must secure the relevant court documents or the electronic recording or transcript of the proceeding to establish a violation of the notice requirement. In the absence of documentary evidence or witnesses with a recollection, the defendant is in a position to do no more than file an affidavit or certification averring that he was not advised of his right to counsel and did not know that he could retain counsel. The defendant who claims he was indigent at the time of the prior proceeding should attest that he was not advised and did not know of his right to appointed counsel, and was unable to afford an attorney. In future cases, he also should attach to his affidavit or certification relevant documents -- bank statements or other financial documents that would establish his indigence in accordance with the standards set forth in N.J.S.A. 2A:158A-14 and N.J.S.A. 2B:24-9.

B.

In the present case, the Piscataway Municipal Court has indicated that no record remains of whether Patel's 1994 DWI guilty plea was uncounseled or whether Patel was given notice of his right to counsel and, if indigent, the right to appointed counsel. Patel filed three certifications in the Piscataway Municipal Court in support of his application to bar the use of his 1994 DWI conviction to enhance his custodial term. He attested that the court never advised him of his right to retain an attorney or, if indigent, his right to an appointed attorney at no charge; that had he known that he had the right to an appointed attorney, he "would have taken advantage of that option"; that at the time he appeared in court he was unemployed, "barely scraping by," and had no money to hire a lawyer; and that he entered his guilty plea without the assistance of counsel.

Patel has made clear in his certifications that had he been advised of his right to counsel, he would have sought the assistance of counsel -- preferably appointed counsel -- and, if he had resources, retained counsel. Patel's assertions -- like those of the defendant in Laurick -- have gone unrebutted. See Laurick, 120 N.J. at 6. Patel has satisfied his burden of showing that his prior uncounseled DWI conviction was caused by the municipal court's failure to advise him of his right to counsel.

Still, Patel must vault the five-year time bar imposed by <u>Rules</u> 7:10-2(g)(2) and (b)(2) for a "Petition to Obtain Relief from an Enhanced Custodial Term Based on a Prior Conviction."  <u>See</u> <u>R.</u> 7:10-2(g).

V.

Our current court rules provide that a petition for <u>Laurick</u> relief "shall not be accepted for filing more than five years after entry of the judgment of conviction or imposition of the sentence sought to be attacked, unless it alleges facts showing that the delay in filing was due to defendant's excusable neglect."  <u>R.</u> 7:10-2(g)(2); <u>R.</u> 7:10-2(b)(2).

In the present case, Patel submits that he sought relief from his prior uncounseled conviction at the only time that it made sense to do so.  When Patel pled guilty to DWI in 2010 in the North Brunswick Municipal Court -- a second DWI conviction -- he was sentenced as a first-time offender because his first DWI conviction occurred more than ten years earlier.  <u>See</u> N.J.S.A. 39:4-50(a).  Patel would not have received any benefit then by challenging his 1994 uncounseled conviction in the Piscataway Municipal Court.  Even if successful, he still would have been sentenced as a first-time offender in the North Brunswick Municipal Court.  Indeed, the Piscataway Municipal Court might have wondered why Patel was wasting his time and the court's resources by bringing a meaningless challenge.  Additionally, had Patel sought

27

information about his uncounseled conviction, he probably would have learned that relevant information had already had been purged from the municipal court records due to the judiciary's retention policy. See State of New Jersey Judiciary, Recs. Retention Schedule (Mar. 16, 2001).

In short, Patel filed his petition for Laurick relief when it mattered and therefore any "delay" should be deemed excusable.

Bringhurst supports this point. There the Appellate Division observed that "given the nature of a Laurick petition, a defendant may routinely demonstrate that any petition filed beyond the five-year limit was not the product of neglect or some other disqualifying reason, and thus, should not be automatically time-barred." 401 N.J. Super. at 424. As the Bringhurst court recognized, "[t]he fact that a prior DWI conviction may have been uncounseled would, in and of itself, be of no moment unless and until there was a subsequent DWI conviction." Id. at 432-33. It reasoned that because "a second or subsequent [DWI] conviction may occur at any time in the future, it would be illogical to apply the Rule's five-year time limit mechanistically to deny all [Laurick] applications." Id. at 433. The Appellate Division concluded that it could "discern no reason why the Supreme Court would have explicitly recognized the Laurick-styled PCR petition on the one hand, and at

28

the same time deny its relief where 'the extent and cause of the delay' was not occasioned by the defendant." Ibid.

Importantly, the Bringhurst court referenced the 2004-2007 Report of the Supreme Court's Committee on Municipal Court Practice, which recommended a rule that would have allowed a Laurick petition to be filed at any time. Id. at 430.

In its 2007-2009 Report, the Municipal Court Practice Committee again recommended a rule without a five-year time limit for Laurick petitions, citing Bringhurst. Mun. Ct. Practice Comm., 2007-2009 Report 27 (2009). As the Committee explained, a defendant has "no grounds for filing [a Laurick] petition . . . unless or until [he] has been arrested for a [second or subsequent] violation of the [DWI] statute." Ibid.

We are persuaded that there is wisdom to the previous recommendations of the Municipal Court Practice Committee, as well as the reasoning of Bringhurst, for the removal of the five-year limitation on Laurick petitions. We therefore accept the recommendation in the Committee's 2007-2009 Report for a rule eliminating any time limitation for filing a Laurick petition. We adopt the language originally proposed by the Committee and now amend in part Rule 7:10-2(g) to provide the following: "(2) Time Limitations. A petition seeking relief under this Rule may be filed at any time." Typically,

29

we would refer a proposed rule change to the appropriate Court committee. State v. Robinson, 229 N.J. 44, 74 (2017). Here, however, the Municipal Court Practice Committee has twice recommended this rule change, and therefore a referral is unnecessary. Accordingly, our adoption of the new rule is effective immediately pursuant to "the Court's authority under Article VI, Section 2, Paragraph 3 of the State Constitution to make rules that govern the administration of the court system." See ibid.

To be clear, a defendant who seeks traditional post-conviction relief to vacate a DWI conviction -- as opposed to Laurick relief -- must abide by the general principles governing post-conviction relief and the five-year time bar in the absence of excusable neglect. R. 7:10-2(b)(2). The five-year time bar is appropriate for traditional post-conviction relief because, if a defendant reasonably believes that he has been wrongly convicted as a result of the denial of counsel, he should challenge that conviction as early as possible rather than sit on his rights "until it is too late for a court to render justice." See State v. Mitchell, 126 N.J. 565, 576 (1992). As we have explained, courts "should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Milne, 178 N.J. 486, 492 (2004) (quoting State v. Afanador, 151 N.J. 41, 52 (1997)).

## VI.

In summary, when facing a second or subsequent DWI conviction, an indigent or non-indigent defendant may file a petition for post-conviction relief to bar the use of a prior uncounseled DWI conviction as a predicate conviction for increasing a term of incarceration. This form of post-conviction relief does not prohibit the imposition of enhanced financial or administrative penalties, such as a period of license suspension. By "uncounseled" we mean an unrepresented defendant who was not advised by the municipal court of his right to retain counsel or, if indigent, of his right to appointed counsel without cost; who otherwise did not know of his right to counsel in the proceeding and did not waive that right; and who, if properly advised of his rights, would have secured counsel or accepted appointed counsel. The defendant has the burden of proving he was uncounseled, but is not required to establish that the outcome would have been different had he been represented.

Although his certifications were far from ideal, Patel carried his burden of presenting sufficient proof -- unrebutted by the State -- that his 1994 guilty plea was uncounseled, whether he was indigent or non-indigent. Patel had no obligation to establish that he would not have pled guilty or been convicted at trial had he been represented by counsel.

31

Accordingly, we reverse the judgment of the Appellate Division and remand this matter to the Tewksbury Municipal Court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.